UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MIGUEL A. MARTINEZ,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 2:15-cv-00883-MMD-NJK<br><br>ORDER |

**I.　SUMMARY**

Plaintiff Miguel A. Martinez initiated this action *pro se* to assert a Fourth Amendment excessive use of force claim under 42 U.S.C. 1983 arising from an incident where Defendant Officer Michael Donovan fired his duty weapon at him eighteen times. Before the Court is Defendants Las Vegas Metropolitan Police Department ("Metro") and Donovan's motion for summary judgment ("the Motion"). (ECF No. 65.) The Court issued a minute order notifying Plaintiff that he had 21 days from November 21, 2018, to file a response. To date, Plaintiff has not filed a response. Nevertheless, the Court has reviewed the Motion and the Second Amended Complaint ("SAC") (ECF No. 21). The Court agrees with Defendants that the use of force was reasonable under the totality of the circumstances and will grant the Motion

**II.　RELEVANT BACKGROUND**

The following facts are taken from the evidence presented in Defendants' Motion. (ECF No. 65.) The Court accept these facts as undisputed since Plaintiff has not responded.

Metro officer L. Hancock responded to a call on May 15, 2013, at about 6:15 p.m. from Christian Esterline, who claimed he had been shot five times with a BB gun by his

roommate, Martinez. (ECF No. 65-1 at 2.) Esterline told Hancock that he had allowed Martinez to stay with him but asked Martinez to leave when he suspected that Martinez was stealing. (*Id.*) An argument ensued and turned physical when Martinez produced a BB gun and shot at Esterline, who realized the gun was a BB gun when he was hit.[1] (*Id.* at 2, 4.) Hancock and other Metro officers were unable to locate Martinez during the swing shift. (*Id.* at 2.)

Several hours later, around 1:31 a.m. on May 16, 2013, and during the graveyard shift, Esterline called Metro's dispatch, claiming that Martinez had returned to his residence and was shooting at his two roommates.[2] (*Id.*) Hancock did not tell dispatch that Martinez had a BB gun. (*Id.*) The officers who responded on the graveyard shift were not aware of the previous incident.[3] (*Id.* at 2, 4-5.) Accordingly, Donovan was not aware that the gun Martinez used was a BB gun. (*Id.*)

When Donovan received the notification that a report had been made about a male individual was shooting at the caller's residence, he was near the location and decided to investigate. (ECF No. 65-4 at 2.) As he drove near the residence, he saw a man walking

---

[1]The BB gun was a Black Cobalt Replica BB gun; the police report states that the "BB gun resembled a firearm in, color, size, shape and weight." (ECF No. 65-1 at 3.) A copy of the photographs of the gun that was taken from Martinez after he was detained is found at ECF No. 65-5.

[2]Apparently dispatch was unable to locate the earlier report from Esterline because he had provided an incorrect address in connection with the first report. (ECF No. 65-1 at 5.)

[3]Martinez alleges in the SAC that Esterline reported to dispatch that Martinez "had returned to the residence and again had shot off BBs." (ECF No. 21 at 4.) However, Martinez obviously was not involved in the call and would not have personal knowledge about the call. Defendants' proffered evidence, including the police report of the incident, shows that Donovan did not know Martinez had a BB gun. The police report specifically states that Esterline did not tell dispatch that Martinez used a BB gun (ECF No. 65-1 at 2), and Donovan states in his declaration that he thought Martinez had a gun (ECF No. 65-4 at 3). Martinez's unsupported allegation in the SAC is not enough to create a material issue of fact that Donovan knew Martinez had a BB gun. *See S.E.C. v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007) (stating that an uncorroborated and self-serving declaration is one that includes facts beyond declarant's personal knowledge and provides no indication as to how declarant knows the facts to be true); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (finding that uncorroborated, self-serving testimony alone does not create a genuine issue of material fact precluding summary judgment).

2

who fit the description of the shooter, and he decided to follow, allowing for time to receive additional information. (*Id.*) However, as the man who later turned out to be Martinez continued walking further into the parking lot of a restaurant, Donovan decided to initiate a stop out of concern that he would lose positional advantage. (*Id.* at 2-3.) Donovan activated his patrol vehicle's emergency lights and shined a spotlight at Martinez. (*Id.* at 3.) But Martinez continued walking so Donovan decided to exit his vehicle to attempt to communicate with Martinez. (*Id.*) According to Donovan, "[b]ecause of the violent nature of the 911 call, and because the individual refused to comply with [his] efforts to stop him, [Donovan] withdrew [his] duty weapon." (*Id.*) Donovan gave verbal commands for Martinez to stop, but Martinez initially did not respond. (*Id.*) When Martinez did stop, he took his left hand out of his pocket and turned his right shoulder toward Donovan. (*Id.*) Donovan noticed that Martinez had something in his left hand but was not able to see the object until Martinez's left hand was in full view, at which point Donovan identified the object as a "black handgun." (*Id.*) Donovan fired about 18 rounds at Martinez, stating that he did so because Marintez "appeared to be performing a tactical pivot towards my direction with a firearm in his hand, the violent nature of the call, because of [Martinez's] reluctance to obey my commands, and because I was in fear for my life." (*Id.*) Martinez continued to try to reach for his gun as he was falling and other officers who responded kicked the gun out of his reach. (*Id.* at 4.)

Martinez asserts a single claim for excessive use of force in violation of his Fourth Amendment rights. (ECF No. 21 at 4.) He alleges that Donovan struck him 14 times and has caused permanent physical and mental damages. (*See id.* at 3.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.    DISCUSSION**

Defendants contend that Donovan did not violate Martinez's Fourth Amendment rights because Donovan used reasonable force under the totality of the circumstances and because Donovan enjoyed qualified immunity even if the force used was excessive.

4

(ECF No. 65 at 4-15.) Because the Court agrees with Defendants that the undisputed facts support the finding that Donovan used reasonable force, the Court declines to address Defendants' qualified immunity argument.

A claim of excessive force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395-97 (1989). To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *Id.*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).

The undisputed facts show that Donovan knew that Martinez possessed a firearm, shot Esterline earlier, and then returned to shoot at his roommates. As Donovan states in his declaration, he considered the violent nature of the call to dispatch when he drew his duty weapon and when he fired at Martinez. (ECF No. 65-4 at 3.) Thus, Donovan believed Martinez posed an immediate threat to his safety when he realized the object in Martinez's hand was a gun and when Martinez failed to respond to Donovan's commands for him to stop. Under the circumstances here, the Court agrees with Defendants that the force used was reasonable.

///

## V. CONCLUSION

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 65) is granted.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

DATED THIS 6th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE